Good morning. May it please the court, my name is George Charides, appearing on behalf of the petitioner Satinderpal Singh in this petition for review of the Board of Immigration Appeals' decision. The petitioner first would like to point the court's attention to the immigration judge's decision on page 51 of the record. On page 51 of the record, the immigration judge concluded that the petitioner did not meet his burden of establishing either past persecution or future persecution. The board in its decision on page 2 of the record implicitly rejects the court's, the immigration judge's first finding regarding past persecution, but thereafter affirmed the second finding. The petitioner argues as a preliminary matter that that is improper because where the board has rejected the first prong of the, first prong regarding past persecution, they cannot thereafter affirm the second prong because the immigration judge in her decision placed the burden on the petitioner to establish future persecution. But now where the Board of Immigration Appeals has rejected the immigration judge's finding regarding past persecution, the burden has shifted to the government, and therefore the case should have been remanded as future persecution had not been fully addressed. Remanded to whom? To the immigration judge. Why couldn't the BIA simply look at the record itself and apply the correct burden? They can, but in this case they explicitly affirmed the immigration judge's. I'm not sure they did. They said, what they said was that the immigration judge referred to the addendum. They then recount the facts that he referred to, and then they say, citing the correct, what I gather is the correct regulation, that it's sufficient to rebut a presumption of well-founded fear of persecution and presumptive threat to life or freedom. So why aren't they just doing what you said they should have done? Well, maybe they can, but it would be my argument that in certain contexts where the immigration judge has not addressed all the issues, then a remand would be appropriate. For instance, where the Board of Immigration Appeals would reverse credibility finding, they would not thereafter make a finding on past persecution. They would remand the case. I'm not sure that's true. Because a finding of past persecution, for credibility findings, the matter certainly has to go back to the IHA. But if you're – whatever you're doing on a set of established facts, why do you have to go back to the IHA? Because the issue has not been fully considered at the immigration court level. It would have been considered had the immigration judge explicitly said, even if the – I'm asking where you're getting the conclusion, that as the scheme exists between the IHA and the BIA, there are some new regulations now which say that for credibility-like findings or fact findings, the board has to review for clear error, so it seems that the IHA does have to make the findings. But for issues that are really mixed questions of law and fact on an established set of historical facts, why does the BIA have to send it back to the IHA? Where are you getting that from? Well, I only – I'm not getting that from anywhere except for the fact that the board has implicitly affirmed the immigration judge's finding, a finding that is clearly legally – No, I can see the point to the Court. But for the fact that the board is seeming – it seems to affirm a decision that is clearly improper, given the fact that it placed the burden on the incorrect party. That's my only point. And it's – the major point is that the board's decision is not in any event supported by substantial evidence, where it has independently made this finding. And I apologize to the Court if I've wasted its time on the preliminary issue. On the issue of whether or not the majority's decision is supported by substantial evidence, Petitioner argues that the board has only cited the Department of State report, as well as Petitioner's testimony regarding his stay in Bombay from, I believe, the end of December 1996 to April of 1998. Petitioner argues that the State Department report does not sufficiently conduct an individualized analysis of Petitioner's specific situation because it addresses only the conditions – the changed country conditions, generally the changed country conditions in India in 1996 and then the addendum in 1997. However, in this case, Petitioner testified credibly that he was arrested in December of 1996 during the time in which these reports claimed that general improvements were in India. And moreover, Petitioner testified credibly in the record that the police were still pursuing him even after December of 1996 until such time as he fled India. Petitioner also argues that his stay in Bombay cannot be aptly characterized as safe relocation because he has testified that he was – that one of his arrests, in fact, occurred in Bombay and that, moreover, he testified that he fled his village to go to Bombay to elude the police and then testified on page 95 of the record – excuse me, on page 100 of the record that he did not lead a public life while he was in Bombay, that he, in fact, I believe, stayed at a relative's and worked inside the house in cooking and cleaning and that he did not pursue a public life or hold himself out so as to be recognized or found by the police. And so Petitioner argues that based on his declaration on page 494, in addition with the testimony in court, which was deemed credible, clearly he had fled his village to go into hiding and that – to, in effect, go into hiding, which is in dispute whether or not that constitutes going into hiding and that, accordingly, the presumption that he would be persecuted throughout India has not been rebutted. And at this point, if there are no questions from the court, I would like to defer to the government and reserve the rest of my time. Thank you. Thank you. Good morning again. Your Honor, it's Barry Pettinato appearing on behalf of the respondent. In this case, substantial evidence supports the Board's finding that the government rebutted the presumption of a well-founded fear for two reasons. First, because there's been a fundamental change in the country conditions in India since the Petitioner's last arrest, which was in December of 1996. The country reports speak to the conditions after February of 1997. And also because internal relocation in Bombay is reasonable, and that's the second reason, which under this Court's case law the government only has to establish by a preponderance of the evidence. Let me ask you one question. One thing I didn't understand about the Board's decision. This is noted by the dissenter, and that is the use of the regulations. Yes, Your Honor. I gather there was the regulations that the Board followed or applied here were the ones that were just adopted at the end of 2001. That's correct, Your Honor. Those regulations changed from the regulation that was in existence at the time of the IJ's hearing. Is that right? I think actually this regulation was the first time the internal relocation went into the regulation. But it's important to note that internal relocation had been always a factor in the possibility of rebutting the well-founded fear through this Court's case law and through Board case law. So I believe it was the first time that the Board finally codified the internal relocation possibility to rebut a well-founded fear. Let me ask you, is it clear that the Petitioner here had an opportunity to truly respond to this factor? Well, I would say yes in the sense that internal relocation was always an issue. But the thing about this case was that it arose under ‑‑ it sort of flipped when it got to the Board because originally the immigration judge found that these were legitimate investigative investigations, and then the Board overturned that finding. So there was no finding of past persecution in front of the immigration judge, so perhaps there was no ‑‑ Did the judge make ‑‑ did the IJ make any finding about relocation? Presumably not. No, the judge did not. The Board did that entirely, which I agree with you, Judge Berzon, that the Board certainly could on its own make that determination. It was essentially looking at the historical record as to what happened in the Punjab since the past persecution and make its own determination. In terms of whether this was in any way prejudicial ‑‑ Yes. Based on the country conditions as they related to his claim of past persecution. I mean, his aid and his work and his physical condition and all those other matters which are individual to him under our decision in Nesovich. Well, presumably the Board considered that, although they didn't articulate that. But, I mean, the Board, I believe, is well aware of the law. Those factors are actually spelled out in the Board's own regulations. So what is the record? As I understand the argument, the petitioner's argument now with respect to relocation is that there's not much in the record, but what there is shows that he basically was in hiding in Bombay. He wasn't living in Bombay in any way that an ordinary person would want to live. Right. I have to concede, Your Honor, there isn't a lot of development in the record about what happened in Bombay. What we do know is that he lived there for 17 months, living with these relatives. And during that 17 months that he was there, 16 or 17 months, the police never pursued him there at these relatives. But doesn't he also say that he didn't go out and he didn't work and he wasn't hiding? That was his testimony. He didn't say why that was the case, why after being in hiding for four ‑‑ He also said, didn't he, that they were still looking for him in his home village. Yes, I believe that's the testimony. And is there any evidence as to whether these ‑‑ who was looking for him, was it national police or not? I don't think he specified. It was just very general that police were inquiring about him at his home, in his home village. Does this sound like something that ought to be remanded for a hearing? Well, the court, if the court didn't want to reach the internal relocation issue, the court certainly can affirm the first part of the board's decision, and that's affirming the immigration judge's decision that country conditions have changed. There's been a fundamental change of country conditions, therefore the presumption of a well‑founded fear has been rebutted. And just to address that, I mean, the changes that are expressed in the country reports bear directly on the circumstances surrounding the petitioner's arrest, multiple arrests in India. The petitioner's arrest occurred because the police believed that he was a militant And all of the arrests were associated with specific criminal events, the murder of a police officer, the attempted murder of the prime minister, not the prime minister, but the chief minister, and then later on the assassination of the chief minister. So these were all criminal events that were tied into militant activities. But yet when you look at the Department of State report, after ‑‑ speaks to conditions after February of 1997, and again his last arrest was in December of 1996, the country report suggests that after those elections in February of 1997, a restoration of normalcy came to being in the Punjab. There was a repudiation of Sikh extremism and militant violence. The life in the Punjab for Sikhs they described as normal, while there was a lack of separatist violence. When was the BIA decision? I'm sorry? When was the BIA decision in this case? The BIA decision in this case was July ‑‑ I can't read the date on my badly photocopied copy here, but July 21st, I think, 2003. So what exact use is an addendum from July of 1997? We don't really have any idea what the conditions are now. Well, in some ways you're right. This is an asylum case, and sometimes the ruckets do get slightly stale. One of the things the court, I'm sure, is aware of, that conditions are improving for Sikhs. The new prime minister that was just elected is a Sikh from the Punjab. But I think the country conditions as they exist in the record are sufficient to show that things have returned to some normalcy for Sikhs in the Punjab. There's not this militancy. Sikhs are participating in the government. They're well represented. They're being elected. And this militant movement has pretty much been quieted down. It's pretty much nonexistent now. There isn't that outcrying for a separate state that there was, which I think Sikhs have ultimately found that they can participate through the normal political process. But we have a set of case law that says that there has to be some individualized determination, that general country conditions is not sufficient when there has been a finding of past persecution, which we now have in this case. You agree that we now have that, right? Yes, Your Honor. So where is that individualized determination? Well, Your Honor, in terms of the individualized determination, I think it's obviously the court would recognize it's not going to be reasonable to expect the Department of State to name this Petitioner and say he's no longer going to be persecuted. So I think the individualized ---- Well, the question isn't for the Department of State to make an individualized determination. It's for the BIA to make an individualized determination by looking at the country report and saying and explaining why this person's circumstances are ---- because this country report does reflect that there's still some violence going on in the area, does it not? So there has to be some explanation why he would be in the category, the general category of no problem and not the small category of some problem. Well, I think that the best the Board can do in terms of individualizing the claim, the assessment, is to look at under what context did his claim to pass persecution arise in light of this militism that was going on, those separatist terrorists, and all of these arrests that occurred were specifically related to criminal militant activities. And those sorts of militant activities are no longer taking place, and that's what gave rise to his arrest, and the country reports pretty much reflect that that sort of thing has come to an end. But it also says that a lawyer, a human rights lawyer, was killed in September 1995 and that in March 1997, the police ---- killing by the police of accused militant Kashmir Singh in March 1997. It also says that people are being prosecuted for that, but at least in March 1997, there was still some danger of the militants were going to get killed. I will give you that, Your Honor. It's not ---- it's a mixed bag. You have to script down there. Right. No, I know. It's a mixed bag. I mean, I think ---- Well, that's the question. So once you have a mixed bag, I mean, if you had a report that said, you know, absolutely nobody has been hurt in this country, militant, for the last five years, that would be one thing. We don't have a report like that. We have a report that says things are way, way better, but there are still a couple people getting killed. I think you have to just essentially balance the reasonableness. If he was to be returned, would it be reasonable under the country conditions that we know? No, but the BIA has ---- I mean, so then I go back to my legal problem, which is the BIA didn't answer that question. It did not address in an individualized way the question of why he is not going to be in the category of the people who ---- the few people who are still under attack. You're right, Your Honor. They essentially just affirmed the immigration judge's decision, which said it was ---- Well, no, but then you lose because you already said that we have to assume that they didn't just affirm the IJ's decision because if they just affirmed the IJ's decision, the burden of proof was different. Right. No, they just affirmed the part of the decision which said there's been a fundamental change of country. That's what the immigration fund has been ---- But isn't there a legal difference? Doesn't this individualized application issue only arise if there is past persecution? My understanding is if there isn't past persecution, then the individualized application issue runs in the other direction, and it's the Petitioner who has to prove that he would be the one who was singled out. You're right, Your Honor. And exactly. Because we now have a finding of past persecution by the board that gives rise to this presumption, and that's where the fundamental change comes in. So you're absolutely correct. There is a distinction there between what would have happened in front of the immigration judge and what happened at the board. So, therefore, the changed country condition facts have a different import now than they did originally. Yes. I mean, they have to be viewed differently. The burden is slightly different. If there's no other questions? Thank you. Thank you, Your Honor. I think we have some rebuttal time. Yes. Because Petitioner established past persecution based on one of the enumerated grounds, the burden falls on the government to rebut that presumption. Petitioner argues that based on the record before the court, the government has not met its burden in rebutting the presumption by substantial evidence. In this case, Petitioner was arrested for the first time in 1992 after being arrested for being accused of involvement in the killing of a police officer. Tell me where in the record the material about the relocation to Bombay. Do you know where it is? Yes, Your Honor. In other words, where he said that he didn't go out and he didn't have a job. That would be page 100, Your Honor. It's also, you can also, I believe it said that he fled his village in his declaration, but on the, out of his fear for the police, but on the record on page 100. My question was, it's, I believe, number 10 on the, in page 100. Did the police come looking for you in Bombay? They used to come to the village. My question was, did the police come looking for you in Bombay? No, because most of the time I used to be inside the house. He thereafter testified that he contacted an agent upon his decision to leave India in September of 1997. This is about nine months after going to Bombay. At that point, he had been aware that the police were still looking for him and decided at that time in September of 1997 that he was afraid to remain in India and had to flee to avoid future persecution. The background materials upon which the government is solely relying in this case generally state that there are improved country conditions beginning in February of 1997. Clearly, in this case, Petitioner testified credibly that the police were still looking for him after February of 1997 and that he decided to leave India in September of that same year. Based on his testimony and in light of ‑‑ So what do we do if, what would the remedy be if we concluded that on the country conditions issue that there was insufficient individualized determination? Do we remand to the BIA for that determination or do we say, do we grant the petition? Well, if the court finds that there's an insufficient determination, then I would concede that it would have to be remanded. However, if the court determines that an individualized analysis was attempted but that it was insufficient, then the petition must be granted. If there are no more questions, I would thank the court for its time. Thank you, counsel. Thank you. Thank you.
judges: Paez, Berzon, Bea